Heard April Term, 1878.

CASE No. 658.

R. C. McFADDEN v. A. A. GILBERT & F. E. DINGLE.

A sealed note for $1397, dated March 30th, 1870, and payable November 1st, 1871, " in currency at its gold value on the 10th day of January last passed," *held* to mean that the obligor would pay to the obligee at the maturity of the note so much money in currency as $1397 in gold would have commanded on January 10th, 1870. Haskell, A. J., *dissented.*

Before Shaw, J., at Sumter, September, 1876.

This was an action by Robert C. McFadden against Allen A. Gilbert and Francis E. Dingle to foreclose a mortgage of real estate given by the defendant, Allen A. Gilbert, to secure the payment of four sealed notes, dated March 30th, 1870.

The main question in the case was as to the construction of two of the said notes, one for $1397, payable on November 1st, 1871, " in currency at its gold value on the 10th day of January last passed, with interest from that date payable annually until the whole is paid ;" and the other for the same amount and in the same terms, except that it was payable November 1st, 1872.

Upon the question as to the construction of the two notes above-mentioned, the decree of his Honor the Circuit judge is as follows :

I come now to the main question of law in the case, to wit, the construction of the contract to pay two sealed notes each for the sum of $1397 " in currency at its gold value on the 10th January, 1870."

As stated, in the finding of facts, it was argued by counsel that on January 10th, 1870, gold stood at a premium of twenty per cent. being worth $120, and currency at a discount of sixteen and two-thirds per cent. being worth eighty-three and two-thirds per cent. Either amount in a calculation, will bring the same result. The contract to pay " $1397 in currency, at its gold value, on 10th January, 1870," is not a contract to pay $1397, but a different

sum, either more or less; whether more or less, depends entirely upon the wording of the sealed instrument itself, and cannot be varied or altered by any parol agreement or calculation between the parties, if any such had been proved.

The words of the contract "in currency at its gold value" make evident the intent of both parties that the defendant, Gilbert, was not to be bound to pay in gold, nor to deliver to Mrs. Dingle so much gold as a commodity, but that he should have the privilege of paying, in currency, the amount the contract bound him to pay. The whole is, therefore, reduced to the single question, what amount does the contract bind him to pay in currency?

By admission of all parties $1 in currency on January 10th, 1870, could have commanded in the market only eighty-three and one-third cents in gold; Mr. Gilbert therefore had the right to tender currency, but was bound to tender so much as would command $1397 in gold.

A promise to pay $1397 in currency would be performed by the payment of so many dollars in United States treasury notes, called legal tenders, or in bills of national banks. But the promise in this case is not such a simple one. The value of the currency which was to be used in the payment, was not one hundred cents to the dollar, but its value in gold on a certain day, which value in gold was eighty-three and one-third cents.

The court cannot see how the contract is to be performed except by the payment of so much currency, as estimating each dollar at gold value on January 10th, 1870, to wit, eighty-three and one-third cents, will amount to the sum promised to be paid; upon the principle above enunciated, there was due on December 28th, 1874, on one of said notes the sum of $1507.62, all of which was principal, and on the other note, the sum of $2340.16 of which $1676.40 was principal, and $663.76 was interest.

A decree of foreclosure according to the foregoing opinion was duly entered and the defendant, Gilbert, appealed.

*Messrs. Moise & Lee,* for appellant.

*Messrs. Blanding & Earle* and *Fraser, Haynsworth & Cooper,* contra.

November 25th, 1878. The opinion of the court was delivered by

WILLARD, C. J. The question in this case depends upon the construction to be put upon the language of two sealed notes, as it regards the amount to be paid. One of these notes is as follows:

"On or before the first day of November, 1871, I promise to pay to Joseph A. Duffin or order, thirteen hundred and ninety-seven dollars, in currency, at its gold value on the 10th day of January last past, with interest from that date, payable annually, until all is paid, for value received."

The other note is payable in 1872, but is, in all other respects, identical with that recited. The notes bear date March 30th, 1870, and cover the consideration of a sale of property.

It was evidently the intent of the parties that the payee should be put in the same position, as it regards the extent of his pecuniary interest under it, as if the money had been actually paid on the 10th day of January next preceding the date of the note, and the money put at interest at the rate contemplated by the contract. They were dealing in a fluctuating currency, and the parties, no doubt, intended to eliminate the fluctuations that might occur subsequent to the 10th day of January, 1870. If this conclusion be correct, then the instrument is to receive the same construction that would have been given had the parties contracted together on the 10th day of January, 1870, in the following terms, viz.: "I promise to pay J. A. D. this day $1397 in currency, at its present gold value." It is not disputed but that the parties could legally contract with reference to gold as the sole standard of value under the contract, nor that they might contract for payment in currency, according to its market value, in terms of gold instead of its nominal value, so that the amount of currency called for would be that which might be required to bring it to a purchasing value equal to the amount of gold coin called for by the terms of the note. The question placed before us for determination is, simply, what was the intention of the parties? When there are two standards of value of unequal purchasing power, and parties are at liberty to adopt either for their contracts, it is not unusual to find them so

doing. Where one of these standards is a fluctuating one, and the other is practically stationary, the motive to select one or the other of these standards as the rule of their dealing, is strong, according as the parties desire certainty in their dealings or the speculative advantage of fluctuations. It is evident that in the present case the parties desired a result certain on the 10th day of January, 1870, but at the same time the payor desired the convenience of liquidating the amount to become due at the maturity of the note in currency, more readily accessible than gold. It is, therefore, clear that they intended to refer the ascertainment of the amount to be paid in currency to the standard of gold value prevailing at that day. The question is, in what manner did they intend to apply this standard? The view taken by the Circuit decree is based on the fact that on the 10th day of January, 1870, $1 in gold was worth "one dollar and twenty cents in currency."

This fact is not disputed. The decree holds that each dollar called for by the notes was to be paid at maturity by $1.20 in currency. On the other hand the appellants contend that in order to ascertain the amount of currency required at maturity, the amount called for must be taken at the gold value of $1397 of currency, according to the value that prevailed on January 10th, 1870; that as each dollar of currency was worth only eighty-three and one-third cents at that time, the actual amount to be paid, measured by gold value, was $1164.12; that this is to be paid in an amount of currency worth at maturity that sum in gold. It follows that, as currency had appreciated at the maturity of the notes as compared with its value January 10th, 1870, a less sum was required in currency than was required by the face of the notes. The difference between the two views is, that, according to the Circuit decree, the value of the contract was fixed in terms of gold, and the quantity of currency required for payment to be ascertained by comparing the value of currency with that of gold on the 10th day of January, 1870, its nominal amount to be increased accordingly; while the appellants contend, in effect, that the amount of $1397 was nominal, merely, the gold value of that currency being the real agreed sum; and that the terms "at its gold value" were not used to estimate the value of the

N

currency by which payment might be made, but to convert a nominal liability, stated by the parties, into a real liability for a diminished sum.   The Circuit decree rests on the idea that by "dollars" the parties meant legal dollars of the United States, fixed in reference to a certain quantity of gold of a certain fineness, while the appellants hold that "dollars" means something that was neither according to the standard of gold nor of currency at the date or maturity of the contract, but was an amount agreed on for that purpose, namely, eighty-three and one-third cents. Had the parties contracted in the terms above supposed, viz., to pay, on the 10th day of January, 1870, $1397, in currency at its gold value, the amount called for would have certainly been that arrived at by the Circuit decree.   In that case the words "at its gold value" would have been senseless if the debt could be discharged by currency at the nominal value of $1397—that being less than gold value.   To give these words any efficacy in the case supposed, it is necessary to assume that the amount to be paid was to be fixed according to the gold value of "dollars," and the currency to be taken for what it was worth relatively to gold. The result would have been that the amount of currency required on the 10th day of January would have been greater than the amount stated on the face of the notes by twenty per cent.   The effect of this rule would be that the amount of currency required to discharge the contract would be unaffected by any subsequent fluctuations in the value of currency relative to gold, and this is the only motive that can be assigned to the parties for fixing a day certain as the basis for computing the relative value of currency and gold.   Under the view taken by the appellants, the fluctuation of currency would not be alienated from the calculation of the amount due, for the more the purchasing value of currency increased, the less amount of it would take to satisfy the terms of the contract.   On this view the payee would take the whole consequence of present depreciation without the benefit of future appreciation.   Thus, as currency was in the course of appreciation, the payee would neither get the benefit of a gold contract nor a pure currency contract, but a mongrel less valuable than either.   That the parties had in mind any such artificial rule of dealing is not for one moment to be supposed.   What

April Term, 1878.

were the essential characteristics of a gold contract was well understood by the community, and they often had recourse to such contracts. They also understood what was meant by a currency contract. The idea that " dollar," as used in this contract, should mean the amount of gold that a depreciated currency dollar would sell for on a particular day, is too metaphysical to suppose that it would influence practical dealings. Habits of dealing always enter largely into the construction of contracts. Disputable language in a contract is to be solved, if possible, by reference to familiar habits of dealing.

Fanciful and unusual intentions cannot be ascribed on merely inferential grounds, and without a necessity imposed by the sense of the terms employed.

In the present case there is no difficulty in the language employed to prevent placing the contract in question in the familiar class of " gold contracts," as dealt in by the people, and therefore we are not at liberty to assume intentions of a very special and unusual kind.

We are satisfied with the conclusions of the Circuit decree, and the appeal must be dismissed.

Appeal dismissed.

McIVER, A. J., concurred; HASKELL, A. J., dissented.